ESSEX COUNCIL NUMBER 1, NEW JERSEY CIVIL SERVICE ASSOCIATION, INC., A CORPORATION OF NEW JERSEY, *ET AL.*, PLAINTIFFS, v. KENNETH A. GIBSON, MAYOR OF THE CITY OF NEWARK,, NEW JERSEY, AND CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided May 7, 1971.

*Mr. Martin Fox* for plaintiffs (*Messrs. Fox and Fox,* attorneys; *Mr. Arthur D. Grossman,* on the brief).

*Mr. Gerald M. Freundlich* for plaintiffs American Federation of State, County and Municipal Employees AFL, CIO, *etc.*.

*Mr. W. William Hodes* for defendants (*Mr. William H. Walls,* Corporation Counsel of Newark, attorney).

ANTELL, J. S. C. (temporarily assigned). The narrow question presented by this class action in lieu of prerogative writs and for declaratory relief is whether the appointing authority of a municipal government may, without a commensurate increase in compensation, enlarge the work week of a selected group of municipal employees who are members of the classified civil service. The class for whose benefit this action is brought number approximately 500 to 600 employees who have served the City of Newark in various capacities at 30 hours a week for lengths of time ranging up to 23 years. That the 30-hour work week has always been a basic condition of employment appears from personnel forms on file with the city since the inception of the employments. This group is evidently a minority among city employees in

this respect, since the work week prevailing for others is 35 hours.

By notice letter dated January 19, 1971, received by all the affected employees, defendant Kenneth A. Gibson, mayor of the City of Newark, directed that commencing February 1, 1971 they would be required to work an additional five hours a week. Noting that the city is faced with a deteriorated financial situation, the letter expressed the administration's view that "in this critical time a 30 hour week is a luxury we can no longer afford." The document is silent as to whether plaintiffs may expect any added salary or other benefits to compensate them for the forfeiture of this "luxury," and defendants' counsel frankly acknowledges that such an expectation would not be warranted.

Defendant city is and has been at all times material hereto subject to the provisions of the New Jersey Civil Service Law as from time to time amended over the years.

*N. J. S. A.* 11:22–6, 11.1 and 38 provide for tenure in office, and they safeguard plaintiffs from removals and reductions except in the manner provided by law. Plaintiffs maintain that the aggregate effect of these enactments is to disallow an increase in working hours without added pay since this is a "reduction" in disregard of tenure and in violation of statutory provisions regulating the manner by which this may be accomplished. Defendants deny that their action is a "reduction" within the meaning of section 38, *supra,* of the Civil Service Act. They argue that extending the work week is properly within their competence with or without good cause; that this was done in reasonable, nondiscriminatory fashion, and that action of this kind addressed to the working conditions of so large a group of employees, may be relieved against only by negotiation and not in the manner here employed. Defendants further urge that the relief sought should be denied by reason of plaintiffs' failure to exhaust administrative remedies.

Defendants specifically disaffirm their reliance upon any claim of economic emergency in justification of the measure

taken, and no evidence of the city's financial straits was offered. *Cf. Henninger v. Bergen County,* 130 *N. J. L.* 191 (Sup. Ct. 1943).

Notwithstanding plaintiffs' failure to pursue administrative remedies within the Civil Service establishment, the court will accept the controversy. The question is of public interest, involving as it does so numerous a class of public employees. The only question presented is one of law; there are no factual disputes, nor is there any necessity for the application of agency expertise, policy, discretion or judgment. To require exhaustion of administrative remedies would result only in useless delay which would be detrimental to the public interest. *E. g., Waldor v. Untermann,* 10 *N. J. Super.* 188, 191–192 (App. Div. 1950); *Loboda v. Clark Tp.,* 74 *N. J. Super.* 159, 166 (Law Div. 1962), aff'd 40 *N. J.* 424 (1963); *Roadway Express, Inc. v. Kingsley,* 37 *N. J.* 136, 141 (1962). The rule requiring exhaustion of administrative remedies is neither jurisdictional nor absolute. *Matawan v. Monmouth County Tax Bd.,* 51 *N. J.* 291, 296 (1968). Also favoring judicial intervention at this stage were the considerations which led the court to grant plaintiffs *ad interim* relief, a remedy which could probably not have been provided by the administrative agency. *R.* 4:69–3.

Whether the city's five-hour extension of the work week is a "reduction" without compliance with *N. J. S. A.* 11:22–38 must be judged in light of underlying policy considerations intended to be promoted by the Civil Service Law. Statutes should be so construed as to suppress the mischief and advance the remedy. *Newark v. Fischer,* 8 *N. J.* 191, 200 (1951).

The Civil Service Act is a tenure of office law. *Devlin v. Cooper,* 124 *N. J. L.* 155, 158 (Sup. Ct. 1940), aff'd 125 *N. J. L.* 414 (E. & A. 1940). It is the purpose of civil service legislation to put positions in the classified service beyond political control and the exercise of partisanship and personal favoritism. Its underlying motivation is to obtain in the public interest an efficient public service based on

merit appointment. The guarantee of tenure in office and protection against groundless demotions and reductions are important inducements to attract qualified personnel into public service. *Park Ridge v. Salimone,* 21 *N. J.* 28, 44 (1956); *Mastrobattista v. Essex County Park Comm'n,* 46 *N. J.* 138, 145 (1965). Thus it has been said that the Civil Service Law "should be given a broad construction to bring employees within its operation" and that it is entitled to be liberally construed in favor of broad tenure protection to those appointed thereunder. *State Dept. of Civil Service v. Clark,* 15 *N. J.* 334, 341 (1954); *Mastrobattista v. Essex County Park Comm'n, supra,* 46 *N. J.* at 147.

In *Scancarella v. Dept. of Civil Service,* 24 *N. J. Super.* 65 (App. Div. 1952), an incoming sheriff elected to reduce the salary of his chief clerk by some $1,300, maintaining that he was free to do this arbitrarily if he chose. In restoring the chief clerk to his original salary the court noted that although the sheriff was empowered to fix the clerk's salary initially, the clerk thereafter passed under the protection and scope of Civil Service and his compensation became immune from reduction except as specifically provided by law. The governing considerations were noted by Justice Francis, then temporarily assigned as a judge of the Appellate Division, in the following language and are germane to the question:

> In the light of all the circumstances no other construction is reasonable. To hold otherwise would be to subvert an important part of the public policy manifested by the civil service legislation. The contrary view would permit each newly elected sheriff to reduce the salary of a career chief clerk to the minimum authorized by the statute. This power could be invoked for purely political reasons or to serve any other personal motive of the sheriff, such as a desire to persuade the incumbent clerk to resign. The existence of such power is so incompatible with the nature of public service as the Legislature has recognized that service that it should not be declared to exist in the absence of the clearest kind of legislative declaration. [At 72]

If immunizing salaries from reduction is a proper safeguard to protect civil service employees from coerced resig-

nations, there is no reason why working hours should not be secured against enlargement to provide the same protection. The point is especially valid in light of defendants' contention that the only limit upon the extent to which they may increase working hours is determinable solely by the market for job applicants. It follows that if the five-hour increase were to be countenanced in this case it would have to be for reasons and considerations of policy which could equally validate a 10, 15 or 20-hour increase. It is inconceivable that the Legislature intended that civil service employees should be vulnerable to such vital modifications in the most basic aspect of their employment conditions.

Although defendants contend otherwise, lengthening the working day goes beyond the mere adjusting of working conditions, such as by shortening a coffee break. The former has to do with the magnitude and scope of the day's employment; the latter is an incident of employment having to do with the degree of liberty the employee may enjoy during working hours so that his efficiency may be thereby enhanced. The coffee break, regardless of duration, is now so generally accepted in our industrial life as to constitute a work related activity. I *Larson's Workmen's Compensation,* § 15.54 at 245, f. n. 18.

The city further maintains that since the appointing authority is empowered to fix the initial compensation for the jobs in question, there should logically be no restraint upon its power to modify those salaries from time to time as in its discretion the public interest may require. But this is the precise argument considered in *Scancarella v. Dept. of Civil Service, supra,* at 72, and rejected by the court.

Tested by these principles it is concluded that by changing the work week from 30 to 35 hours — an increase of almost 17% — without good cause and without a corresponding increase in benefits, there has been a reduction in rank, status and compensation, *e. g., Tanis v. Passaic County,* 126 *N. J. L.* 303, 306 (E. & A. 1941), which is expressly forbidden by *N. J. S. A.* 11:22–38. Obviously, the

pay and other compensation received by the plaintiffs over the years has been in contemplation of a 30-hour week. Requiring them to work longer hours while continuing salaries at present levels so dilutes their compensation that they are no longer receiving the same pay for the job. In the sense that it reflects a devaluation of their working time, it is as clearly a reduction in position as if their salaries had been decreased for the 30-hour week.

Finally, defendants argue that because the alteration in working hours was sought to be accomplished as to an entire class of employees similarly situated, the issue raised cannot be thought of as involving vested rights of individuals under the Civil Service Law, but rather as a condition of the employment contract which may be the subject of negotiation between the parties. See *N. J. S. A.* 34:13A–1 *et seq.*, the New Jersey Labor Mediation Act. Passing the question of whether vested civil service rights may be the subject of negotiation, it is responded that although the employees are seeking to achieve a remedy by collective action, this fact does not alter their status as individuals, nor deprive them of the full protection of the Civil Service Laws to which they are individually entitled.

For the foregoing reasons, it is concluded that defendants' action in attempting to increase the working week of the class of employees for whose benefit this proceeding is brought is prohibited by controlling provisions of the Civil Service Law and is therefore invalid.