ARDEN & COULTER, et al., Brenda Carter, Muriel Cousins, Carole Gates, Wilma Jacona, Lisa D. Parker, Beth Saremba, and Derralean Wilson, Appellants–Petitioners,

v.

STATE EMPLOYEES' APPEALS COMMISSION, et al., Appellees–Respondents.

No. 73A01–9011–CV–452.

Court of Appeals of Indiana, First District.

Sept. 26, 1991.

Rehearing Denied Nov. 7, 1991.

David W. Stone, IV, Stone Law Office & Legal Research, Anderson, Nancy S. Brown, Brown and Brown, New Castle, for appellants-petitioners.

John F. Kautzman, Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, for additional appellants-petitioners Coulter, et al.

Linley E. Pearson, Atty. Gen., Brenda Franklin Rodeheffer, Deputy Atty. Gen., Indianapolis, for appellees-respondents.

BAKER, Judge.

This is a consolidated appeal from two judgments of the Shelby Circuit Court. The petitioner-appellants are state employees working at the Richmond State Hospital in Richmond, the Indiana School for the Deaf in Indianapolis, and the LaRue Carter Memorial Hospital in Indianapolis. The Richmond State and School for the Deaf employees are subdivided into two groups: those who are eligible for overtime pay, and those who are not. All the LaRue Carter employees are eligible for overtime pay. All the overtime eligible employees will be referred to as Group A Employees.

The non-overtime eligible employees will be referred to as Group B Employees.[1]

The issue regarding the Group A Employees is whether the State, under its current statutory and regulatory scheme, may require clerical employees in a given classification to work 40 hours per week for the same salary as that received by other clerical employees in the same classification who work only 37.5 hours per week. We hold that it may not.

The issue regarding the Group B employees is whether the State, under its current statutory and regulatory scheme, may increase the weekly work hours of professional employees working in state institutions from 37.5 hours to 40 hours. We hold that it may.

Affirmed in part, reversed in part, and remanded.

### FACTS

The facts underlying this case are not in dispute. For some undetermined period of time prior to the fall of 1987, both the Group A and the Group B Employees worked 37.5 hours per week. In October 1987, Thomas Beasley, the State Personnel Director, issued an order requiring employees at state institutions to work 40 hours per week, and employees in state offices to work 37.5 hours per week. *Record* at A–344; C–171. The rule made no mention of salary.

After the rule went into effect, appointing authorities at state institutions began requiring both Group A and Group B Employees to work 40 hours per week with no change in biweekly salary. All the Employees objected to the uncompensated increase in hours and timely pursued all administrative remedies, but the State Employees' Appeals Commission (SEAC) issued a decision denying relief. On the Employees' petition for judicial review, the trial court affirmed SEAC, and the Employees now appeal.

1. Because this is a consolidated appeal, we have two sets of records before us. Citation to these separate records will be made according to the surname of the lead plaintiff in each case, i.e., Rebecca J. Arden in the Employees' case against

### DECISION

*Applicable statutes and regulatory enactments*

This case was decided on stipulated facts. In such a situation, our task is to determine whether the trial court properly interpreted and applied the applicable law to the stipulated facts. *Indiana Ins. Co. v. Knoll* (1968), 142 Ind.App. 506, 236 N.E.2d 63 (when facts are stipulated, only questions of law remain for review). Of course, we must bear in mind that, ultimately, we are reviewing an agency determination, and must pay due deference to the agency's expertise. *See Conquest v. State Employees' Appeals Com'n* (1991), Ind.App., 565 N.E.2d 1086, *trans. denied; Citizens Action Coalition v. Northern Ind. Pub. Serv. Co.* (1990), Ind.App., 555 N.E.2d 162. Nonetheless, the questions here are questions of law, not of fact, and questions of law are questions for the courts. *State, ex rel. Bd. of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829, 833, n. 4.

The authority to regulate state employee policies and practices is committed to the Indiana Personnel Department (the Department) under the direction of the state personnel director (the Director). IND.CODE 4–15–1.8–7; 4–15–1.8–3. Among other duties, the Department must:

(1) Develop personnel policies, methods, procedures, and standards for all state agencies.

(2) Formulate, establish, and administer position classification plans and salary and wage schedules, all subject to final approval by the governor.

\*    \*    \*    \*    \*    \*

(8) Promulgate and enforce personnel rules.

\*    \*    \*    \*    \*    \*

(18) Administer the state personnel law, IC 4–15–2.

Richmond State and the School for the Deaf, and Brenda Carter in the Employees' case against LaRue Carter. For example, citation to the first page of a record would read: *Record* at A–1 or *Record* at C–1.

IND.CODE 4–15–1.8–7(a). Additionally, the Director is specifically charged with the authority and responsibility to ensure that a pay plan for state employees is prepared and maintained. IND.CODE 4–15–2–6(a).

Under the authority of these statutes, the Department promulgated 31 I.A.C. 2–11–1,[2] which provides in pertinent part:

> The normal minimum working week shall be 40 hours *except as otherwise established by statute or by specific ruling of the State Personnel Director.*

*Id.* (emphasis added).[3]

We come next to the eye of the hurricane, the legislative Gibraltar around which the maelstrom swirls, the almost four decades old IND.CODE 4–1–2–1, which mandates that:

> state offices be open and able to conduct public business at all times during an eight and one-half (8½) hour working day. *Each employee shall work for a full seven and one-half (7½) hours each working day and provision for a one (1) hour lunch period shall be provided each employee.* Lunch hours of employees shall be staggered to permit the conduct of business at all times during a working day.

(Emphasis added.) The Department interpreted the emphasized language as placing a cap of 7½ hours per day, or 37½ hours per week, on the time state office employees could work without being paid for overtime,[4] and the Director gave life to this interpretation by issuing the October 1987 order discussed above as a specific ruling creating an exception to 31 I.A.C. 2–11–1. *Record* at C–171; A–344.[5]

This system might well be appropriate but for one fact: 31 I.A.C. 2–4–2 requires "*[a]ll* regulations ... shall be designed ... to *guarantee ... equal pay for comparable work* in the several agencies of the state service." This language mandating equal pay for comparable work is not mere verbiage. In *Indiana Personnel Bd. v. Galloway* (1976), 168 Ind.App. 238, 342 N.E.2d 903, and again in *State v. King, supra,* note 2, this court held the State's payment of lower salaries to county welfare workers than to state welfare workers doing comparable work was illegal under 31 I.A.C. 2–4–2.[6]

The question, then, becomes two-fold: 1) are the Employees performing work comparable to that performed by their state office counterparts, and 2) if they are, are they receiving pay equal to that received by their state office counterparts?

## GROUP A EMPLOYEES

### Comparable Work

■ There is no question the Group A Employees and their state office counterparts perform comparable work. The record contains the jointly admitted Department classification profiles for the positions held by the Group A Employees. *Record* at A–315–19, 323–30; C–148–70. The profiles make no distinction between work done in state offices and work done in state institutions. At oral argument, the State relied on the fact that state institutions have the care and custody of people, e.g., penal inmates, psychiatric patients, and blind students, while state offices

---

**2.** 31 I.A.C. 2–11–1 cites as its authority IND. CODE 4–15–2–5, rather than IND.CODE 4–15–2–6 and 4–15–1.8–7. IND.CODE 4–15–2–5 describes the powers and duties of the state personnel board, and is cited because the board controlled state personnel working hours prior to the enactment of Public Law 23–1982, § 41. *See State v. King* (1980), Ind.App., 413 N.E.2d 1016, 1020.

**3.** 31 I.A.C. 2–11–1 covers the work week of merit employees. 31 I.A.C. 1–9–1 uses identical language to define the work week of non-merit employees.

**4.** *See* 31 I.A.C. 2–11–2(C)(1).

**5.** The Employees argue such an interpretation violates the Equal Protection clause of the 14th Amendment to the United States Constitution by treating like-situated employees differently. We need not reach that question, however, because the interpretation is invalid under the Department's own regulations. *See Bayh v. Sonnenberg* (1991), Ind., 573 N.E.2d 398, 402 (court is duty-bound not to review constitutional issue which may be properly decided on other grounds).

**6.** Denominated as Rule 4–2 at the time of both the *Galloway* and the *King* decisions.

serve the general public. Thus, according to the State, institutional employees perform different tasks than do office employees. The State, however, stipulated that none of the Group A Employees holds a position requiring different staffing levels, coverage, or qualifications than would be required in a state office. *Record* at A–291, 295, 298, 301, 303; C–139–40.[7] In other words, the State agrees that a Clerk Typist V at LaRue Carter Memorial Hospital, Richmond State Hospital, or the Indiana School for the Deaf performs exactly the same work as a Clerk Typist V in a state office.[8]

■ The Group A Employees perform work comparable, indeed equal, to that performed by their state office counterparts, and are thus entitled to receive the same pay as those office employees.[9]

*Equal Pay*

Indiana state employees are paid salaries rather than hourly wages. *See* 31 I.A.C. 2–4–2. Salaries are computed biweekly, not annually. *See* IND.CODE 4–15–5.9–1. Overtime earnings are based on an hourly wage calculated by dividing an employee's biweekly salary by the minimum number of hours the employee is required to work in a two-week period. *See* 31 I.A.C. 2–11–2. When the Director's October 1987 order took effect, no change occurred in the Group A Employees' biweekly salaries. *Record* at A–294, 300, 306; C–140–41. They thus receive the same pay for 40 hours of work that their state office counterparts receive for 37.5 hours per week.

■ In a display of frighteningly flawless Orwellian logic, the State argues that like-classified employees receive equal pay, regardless of whether they work 40 hours or 37.5 hours for that pay, because the effective hourly wage is immaterial: only the biweekly salary matters, and the biweekly salaries are the same. *Appellee's Brief* at 12. Taken to its extreme, the State's argument would lead to an absurd conclusion that the Employees could be compelled to work 24 hours per day, seven days per week (a total of 168 hours) for the same salary like-classified state office employees receive for only 37.5 hours of work. The Department's own regulation, 31 I.A.C. 2–4–2, precludes the success of such an argument. *State v. King, supra;*

---

**7.** The binding effect of these stipulations renders any distinctions between state offices and state institutions, expounded on at length by the Attorney General in 1968 OP.IND.ATT'Y GEN. No. 9, at 62, and relied on by Director Beasley in issuing the October 1987 order, immaterial in this case. Even without the stipulations, though, the classification profiles reveal the Group A Employees and their state office counterparts perform comparable work.

**8.** Under the plain terms of 31 I.A.C. 2–4–2, work need only be comparable, not equal, for equal pay to be required. *See Indiana Personnel Bd. v. Galloway, supra,* 168 Ind.App. at 244–45, 342 N.E.2d at 907. The showing here that the work is equal, then, makes an even more compelling case for equal pay than would a showing of comparable work.

**9.** "Comparable work" is a qualitative concept, not a quantitative concept. *See State Trial Attorneys' Ass'n v. State* (1976), 63 Cal.App.3d 298, 133 Cal.Rptr. 712 (California Department of Transportation attorneys had to receive same pay as like-classified attorneys employed by other state agencies); *Brightman v. Civil Serv. Comm'n. of Des Moines* (1973), Iowa, 204 N.W.2d 588 (City was justified in granting lesser pay increase to police detectives than to police sergeants because the sergeants had greater responsibilities, even though the two classes had previously received the same salary); *A.F.S.C.M.E. v. Civil Serv. Comm'n. of West Virginia* (1984), 174 W.Va. 221, 324 S.E.2d 363, *appeal after remand,* 341 S.E.2d 693 (state employees classified as Economic Service Workers I and II, who had precisely the same duties as employees classified as Economic Service Workers III, were entitled to pay equal to that received by the Economic Service Workers III); *Atchinson v. Erwin* (1983), 172 W.Va. 8, 302 S.E.2d 78, *modified on other grounds, Gibson v. West Virginia Dep't of Highways* (1991), W.Va., 406 S.E.2d 440 (statutory increase in duties for inspectors of the West Virginia Department of Natural Resources–Surface Mining Reclamation Division justified greater salary than that received by inspectors of the Department of Natural Resources–Water Resources Division). *See also Usery v. Columbia Univ.* (2nd Cir.1977), 568 F.2d 953 (discussing qualitative differences between jobs performed by two types of maintenance employees as justifying different pay under the federal Equal Pay Act). Thus, the idea that two positions are "comparable" when the difference between then is one of time, is inapposite. The question of time worked goes to equality of pay, not comparability of work.

*Indiana Personnel Bd. v. Galloway, supra.*[10] Moreover, the State has forgotten the common-sense stipulations it entered into to the effect that an increase in hours worked with no concomitant increase in salary is analogous to a decrease in salary. *Record* at A–293, 299, 300, 305; C–141. These stipulations are, of course, binding on the State, the Employees, and this court, and the State will not be heard to contradict itself. *Coonon v. State* (1978), 269 Ind. 578, 382 N.E.2d 157, *cert. denied* (1979), 440 U.S. 984, 99 S.Ct. 1798, 60 L.Ed.2d 246; *Day v. Ryan* (1990), Ind.App., 560 N.E.2d 77.

The disparity in pay also exists when overtime wages are at issue. Eligible state office employees receive overtime pay for every half-hour increment worked over 37.5 hours, 31 I.A.C. 2–11–2(C)(1)(b), while the Group A Employees do not begin earning overtime pay until they work over 40 hours. 31 I.A.C. 2–11–2(C)(1)(a).[11]

At oral argument, the State conceded that Group A Employees do not receive pay equal to their like-classified state office counterparts. Nonetheless, the State argued the disparity is acceptable because the importance of uniformity of hours at a given work-site is greater than the importance of uniformity of hours within a given classification of employees. That argument flies in the face of 31 I.A.C. 2–4–2, and is contrary to the statement by the Court of Appeals of Iowa, with which we fully agree, that "the purpose of civil service classification is equality of treatment within a class, not between classes." *Helgevold v. Civil Service Comm'n* (1985), Iowa App., 367 N.W.2d 257, 261 (citations omitted).

The trial court erred in determining that the disparity in pay between the Group A Employees and their state office counterparts was proper.

## GROUP B EMPLOYEES

The Group B Employees stand on different footing from their overtime-eligible colleagues in Group A. The record indicates the Group B Employees have no state office counterparts performing comparable work 37.5 hours per week for the same pay as that the Group B Employees receive. *Record* at A–320–22, 331–42. If there is no comparable work, there can be no violation of the equal pay for comparable work rule, and we need not discuss the question of equal pay. For the Group B Employees, then, the question is simply whether the State could increase the hours of employment from 37.5 to 40.

The Group B Employees have not directed us to any regulatory, statutory, or constitutional principle or authority in support of their argument that the State, under present law, could not increase their hours, and we have found none. There are cases in which a civil service employer did not run afoul of either the equal protection clause of the 14th Amendment to the U.S. Constitution or a state equal pay for equal work rule, but nonetheless improperly increased the working hours of a group of employees. Those cases, however, were decided on the basis of state statutes and regulations which were different from

**10.** The State has engaged in this type of logical legerdemain before. *See Indiana Personnel Bd. v. Galloway, supra,* 168 Ind.App. at 242–43, 342 N.E.2d at 906. It is no more effective here than it was there, and will not prevail against the plain language of the Department's own rule and the State's stipulations.

**11.** Moreover, the disparity is exacerbated by the method of overtime calculation. For example, imagine two overtime-eligible employees, one a Group A Employee, the other a state office employee, each with a $750 gross biweekly salary. The effective hourly wage of the state office employee working 37.5 hours per week is $10 ($750 divided by 75 hours equals $10/hour). The effective hourly wage of the Group A Employee is $9.38 ($750 divided by 80 hours equals $9.38/hour).

If required to work 40 hours in any given week, the state office employee will receive an extra $25 ($10 × 2.5 = $25), while the Group A Employee would receive the usual $750. *See* 31 I.A.C. 2–11–2(E)(2). For any hours worked beyond 40, as all the parties agree, each employee would receive time and a half. In other words, the state office employee will receive $15 per hour for time above 40 hours ($10 × 1.5 = $15), while the Group A Employee will receive only $14.07 per hour ($9.38 × 1.5 = $14.07). The back pay determination will necessarily utilize a 37.5 hour work week.

Indiana's statutes and regulations. *See, e.g., Essex Council Number 1, New Jersey Civil Serv. Ass'n, Inc. v. Gibson* (1971), 114 N.J.Super. 576, 277 A.2d 562, *rev'd on jurisdictional grounds,* (1972), 118 N.J.Super. 583, 289 A.2d 537; *State v. Public Employment Relations Bd.* (1991), —— A.D.2d ——, 571 N.Y.S.2d 602.

The legislature has entrusted the authority and responsibility for establishing state employee working hours and pay practices to the Director and the Department. 31 I.A.C. 2–11–1, in effect for almost 25 years, establishes 40 hours as the normal minimum work week. In such a situation, without a violation of the equal pay for comparable work rule of 31 I.A.C. 2–4–2, we cannot say there was an abuse of discretion in requiring the Group B Employees to work 40 hours per week.

The trial court properly determined the Group B Employees were not entitled to relief.[12]

### CONCLUSION

The trial court's judgment denying relief to the Group A Employees is contrary to law, and is reversed. The cause is remanded to the trial court for further proceedings consistent with this opinion.

The judgment affirming SEAC's denial of relief to the Group B Employees is affirmed.

ROBERTSON and SULLIVAN, JJ., concur.

---

**12.** It may appear unfair to allow the Department to increase the Group B Employees' hours. Until the legislature resolves whether IND. CODE 4–1–2–1 sets a floor or ceiling on state office employees' hours or merely establishes the hours state offices are to be open to the public, however, we will be unable to follow the lead of the Alabama Supreme Court in a similar case and say "[t]he best feature of this case is that this problem will not arise again." *Pippin v. Brassell* (1984), Ala., 455 So.2d 816, 819.