716 N.E.2d 54 (1999)
INDIANA STATE EMPLOYEES' APPEALS COMMISSION, Indiana State Personnel Department, and Rockville Training Center, Appellants-Respondents,
v.
Patricia GREENE, Angela Stowe, and Karen Walters, Appellees-Petitioners.
No. 49A02-9810-CV-819.
Court of Appeals of Indiana.
September 9, 1999.
*55 Jeffrey A. Modisett, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.
Barbara J. Baird, Macey Macey & Swanson, Indianapolis, Indiana, Attorney for Appellee.

OPINION
KIRSCH, Judge
Appellants-respondents (collectively "the State") challenge the trial court's reversal of a decision of the Indiana State Employees' Appeals Commission ("SEAC"). The action was originally initiated by appellees-petitioners, Patricia Green, Angela Stowe, and Karen Walters (collectively "Employees"), three clerical workers at the Rockville Training Center who sought relief from the State's pay disparity practices. On appeal from the trial court's judicial review of the SEAC's decision, the State presents the following restated issues:
I. Whether the Employees' complaints were timely filed in accordance with 31 IAC 2-13-1(A).
II. Whether the Employees are entitled to back pay.
We affirm in part, reverse in part, and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY
The facts underlying this case are not in dispute. Under IC 4-1-2-1, employees working in state offices were required to work 37.5 hours per week, while employees working in state institutions were required by 31 IAC 2-11-1[1] to work forty hours per week. After discovering that not all state institutions were complying with 31 IAC 2-11-1, the State Personnel *56 Director issued a directive in October 1987 compelling employees at state institutions to work forty hours per week and employees in state offices to continue working 37.5 hours per week.
On January 28, 1990, as a result of the State Personnel Director's mandate, the Rockville Training Center began requiring its employees to work forty hours per week instead of 37.5 hours per week, with no change in biweekly salary. At this time, Stowe and Walters were employed at the Rockville Training Center. Greene was employed at a state office and not affected by the increase in work hours; however, when she transferred to the Rockville Training Center on August 26, 1991, her hours of work were also increased to forty hours per week. In all three circumstances, the Employees were required to work forty hours per week for the same salary as that received by state office clerical workers in the same classification who worked only 37.5 hours per week.
Stowe filed her employee complaint protesting the uncompensated increase in hours on January 14, 1992. Walters filed her employee complaint on January 22, 1992, and Greene did the same on March 8, 1993. The State Personnel Director denied the Employees' complaints due to the pending appeal and settlement negotiations surrounding Arden & Coulter v. State Employee's Appeals Comm'n, 578 N.E.2d 769 (Ind.Ct.App.1991), trans. denied (1992).[2] On September 12, 1993, the State changed the hours of work for employees in both state offices and state institutions (except police) to 37.5 hours per week.
On October 28, 1993, the Employees filed their second pay discrepancy grievance. The SEAC issued a final decision on those grievances on December 15, 1995, denying relief for the stated reason that the Employees' complaints had been untimely initiated. On the Employees' petition for judicial review, the trial court reversed the SEAC, finding that the Employees' complaints had been timely initiated and that they should be awarded back pay from the date the pay disparity first occurred until it ceased on September 12, 1993. The State now appeals.

DISCUSSION AND DECISION

I. Timeliness
Initially, we observe that this case was decided on stipulated facts. As such, it is our task to determine whether the trial court properly interpreted and applied the applicable law to the stipulated facts. Arden & Coulter, 578 N.E.2d at 770 (citing Indiana Ins. Co. v. Knoll, 142 Ind. App. 506, 515, 236 N.E.2d 63, 70 (1968)). While we recognize that ultimately, we are reviewing an agency determination and thus must pay due deference to the agency's expertise, "the questions here remain questions of law, not of fact, and questions of law are questions for the courts." Id. (citing State ex rel. Bd. of Dental Examiners v. Judd, 554 N.E.2d 829, 833 n. 4 (Ind.Ct.App.1990)); see also Real Estate Appraiser License and Certification Bd. v. Stewart, 695 N.E.2d 962, 964 (Ind.Ct.App. 1998).
Here, the State argues that the Employees' complaints regarding the State's pay discrepancy practices were not timely filed pursuant to 31 IAC 2-13-1(A),[3] which provided:

*57 "Any regular employee may file a complaint if his status of employment is involuntarily changed or if he deems conditions of employment to be unsatisfactory. However, the complaint procedure shall be initiated as soon as possible after the occurrence of the act or condition complained of and in no event shall be initiated more than ten (10) calendar days after the employee is notified of a change in his status of employment or after an unsatisfactory condition of employment is created. Failure to initiate the complaint procedure within such time period shall render the complaint procedure unavailable to the employee."
Specifically, the State contends that the Employees' "unsatisfactory condition of employment" was "created" only on January 28, 1990, the date on which the Rockville Training Center implemented its uncompensated increase in work hours. As such, Stowe and Walters, who were working at the Rockville Training Center at the time of the implementation, had until February 7, 1990 to initiate their complaints; and Greene, who commenced employment at the Rockville Training Center on August 26, 1991, had until September 5, 1991 to initiate her complaint.
In Indiana, where an obligation is payable in installments, the statute of limitations runs as to each installment as it becomes due. Smith v. Beasley, 504 N.E.2d 1028, 1029 (Ind.Ct.App.1987) (citing Kuhn v. Kuhn, 273 Ind. 67, 71-72, 402 N.E.2d 989, 992 (1980)). This rule applies to each installment of wages due. Id. (citing Pennsylvania Co. v. Good, 56 Ind.App. 562, 564, 103 N.E. 672, 673 (1913)).
Here, an unsatisfactory condition of employment occurred each time the Employees were paid. With each biweekly paycheck following Rockville Training Center's January 28, 1990 increase in work hours, the Employees received the same pay for forty hours of work per week that their state office counterparts were receiving for 37.5 hours of work per week. This created the disparity in pay which we expressly disapproved in Arden & Coulter as being in contravention of 31 IAC 2-4-2, requiring that "[a]ll regulations... shall be designed ... to guarantee... equal pay for comparable work in the several agencies of the state service." Arden & Coulter, 578 N.E.2d at 771 (quoting 31 IAC 2-4-2). The State violated 31 IAC 2-4-2 with each biweekly paycheck, and with each new violation, the Employees had independent grounds upon which to protest. As such, the trial court did not err in determining that the Employees' complaints were timely filed.

II. Back pay
In the alternative, the State contends that even if the Employees' complaints were timely filed, they are entitled to back pay only to and including the ten days before they filed their respective complaints. We agree. Having held that each paycheck constituted a separate incident of the State's unlawful pay disparity practices and independent grounds upon which to protest, each State employee could file their grievance within ten days of their last paycheck.
The ten-day provision in 31 IAC 2-13-1(A) exists to provide the State with notice and an opportunity to correct unsatisfactory conditions of employment in a timely fashion before substantial damages accrue. To allow an employee to recover back pay for a period greater than ten days prior to the filing of the complaint putting the employer on notice of the unsatisfactory employment condition would undermine this purpose.
Here, the Rockville Training Center implemented its uncompensated increase in work hours on January 28, 1990, but the Employees did not initiate complaint proceedings until 1992 and 1993. Accordingly, the Employees are entitled to back pay only for the time period beginning ten days before the filing of their respective complaints and ending on September 12, *58 1993, the date the State's pay disparity practices were discontinued.

III. Conclusion
We therefore affirm the trial court's determination that the Employees' complaints were initiated in a timely manner. We reverse the amount of back pay the trial court awarded to each of the Employees and remand with instructions to reduce their respective awards to include only the ten days before they filed their respective complaints up until September 12, 1993.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
DARDEN, J., and BROOK, J., concur.
NOTES
[1] The current version of 31 IAC 2-11-1 reduces the normal minimum work week from forty hours per week to 37.5 hours per week, and corrects any discrepancies between the work hours of employees in state offices and employees in state institutions.
[2] In that case, we held that the State may not, under the statutory scheme at issue here, require clerical employees in a given classification to work forty hours per week for the same salary as that received by other clerical employees in the same classification who work only 37.5 hours per week. Arden & Coulter, 578 N.E.2d at 770.
[3] 31 IAC 2-13-1(A) was amended effective July 1, 1995 so as to increase the time limitation for the initiating of the employee complaint procedure from ten days to thirty days. This change does not affect the ten-day limitation applicable to the complaints in the instant case, which arose before the amendment.